[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 5, 2010
JOHN LEY
CLERK

No. 09-14232

_____

D. C. Docket No. 08-00708-CV-T-17-MAP

VIVIAN GARRIGA,

Plaintiff-Appellant,

versus

NOVO NORDISK INC.,
a foreign corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 5, 2010)

Before DUBINA, Chief Judge, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Vivian Garriga appeals the summary judgment in favor of her former

employer, Novo Nordisk, and against her complaint of a hostile work environment, 42 U.S.C. § 2000e-2(a); Fla. Stat. § 760.10(1), and retaliation, 42 U.S.C. § 2000e-3(a); Fla. Stat. § 760.10(7). We affirm.

## I. BACKGROUND

From April 2001 until her termination on September 6, 2007, Vivian Garriga sold medicines in the St. Petersburg, Florida area for Novo Nordisk, Inc., a subsidiary of Novo Nordisk A/S, a Danish manufacturer and distributor of drugs for diabetes. Garriga was a successful sales representative praised by her supervisors. Garriga's success changed when Novo Nordisk hired Brian Taylor in March 2007 as the new Business Manager for Garriga's territory.

As business manager, Taylor had limited interaction with Garriga and other Novo Nordisk sales representatives, but from their first encounter, Garriga objected to Taylor's conduct. Taylor asked everyone at his first district-wide staff meeting in early May to name the celebrity with whom they would like to have sex. Garriga was "speechless," but she did not complain to Taylor because she thought that once she got to know Taylor, they would "get along well." Taylor's sexual banter instead continued. Taylor called Garriga and her work partner, Shannon Duffy, by nicknames that Garriga perceived as sexual in nature and offensive. On May 17, during a two-day "ride-along" in which Taylor accompanied Garriga to

2

her meetings with physicians, Taylor "put his arm around" Garriga in the parking lot of a restaurant. Taylor also "constant[ly]" leered at Garriga's breasts and backside that day, as well as during a meeting in June and another ride-along in July. During these ride-alongs, Taylor negatively reviewed Garriga's work and observed that her sales of certain drugs failed to meet his expectations.

On July 10, Garriga asked Taylor to stop leering at her. When Taylor's conduct continued during meetings on July 16 and 17, Garriga complained of sexual harassment to Roger Arnell, a human resources representative, who interviewed Garriga, Taylor, and four other employees. Arnell determined that Garriga's story could not be corroborated. Taylor learned of Garriga's complaint on July 22. By that date, Taylor and Garriga had interacted eight times over the course of three months.

Ten days later, on August 1, Taylor placed Garriga on a "coaching worksheet," a tool used by Novo Nordisk to evaluate employee performance and identify skills that need improvement. The coaching worksheet required an employee to spend more time with her supervisor. After placement on a coaching worksheet, the employee had 60 days to improve the identified deficiencies.

Garriga never had time to improve her work because Taylor learned during a ride-along the next day that Garriga had sponsored a dinner at the private residence

3

of one of her physician clients. The dinner originally had been planned as a farewell dinner for a physician, but Garriga and Duffy arranged to pay for the meal as part of an informational training presentation. Both Garriga and Duffy had attended with their boyfriends, and the wife of one of the physicians also attended. Taylor notified Arnell about the party and expressed concern that it violated policies of the Pharmaceutical Research and Manufacturers of America. The policies allow employees "occasionally [to] provide meals" to doctors, but not their spouses or other guests, "in a venue and manner conducive to informational communication," (e.g., "at a quiet restaurant") so long as "the primary purpose of the meal is a sales call, medical dialogue, or educational program."

Taylor recommended that the company terminate Garriga. Arnell and another representative of human resources investigated the dinner and determined that it violated company policy because its primary purpose was something other than an informational presentation. Human resources and the compliance department recommended the termination of Garriga and Duffy. Sheila Sewock, Regional Business Director for the Florida Region for Novo Nordisk, independently reviewed the findings from the investigation and terminated Garriga and Duffy on September 6, 2007, for violating company policy.

Garriga filed a complaint against Novo Nordisk and alleged a hostile work

4

environment, 42 U.S.C. § 2000e-2(a); Fla. Stat. § 760.10(1), and retaliation, 42 U.S.C. § 2000e-3(a); Fla. Stat. § 760.10(7). Novo Nordisk moved for summary judgment in its favor. The district court entered summary judgment against Garriga's complaint.

## II.  STANDARD OF REVIEW

"We review de novo an order granting summary judgment." Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807 (11th Cir. 2010) (en banc). We will affirm a summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is a genuine issue of material fact "if the record taken as a whole," and viewed in the light most favorable to the non-moving party, "could lead a rational trier of fact to find for the nonmoving party." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted).

## III.  DISCUSSION

Garriga raises two arguments on appeal, but both fail. She argues that a reasonable jury could conclude that she endured a hostile work environment. Garriga also argues that a reasonable jury could conclude that Novo Nordisk retaliated against her by placing her on the coaching worksheet and terminating

5

her. We discuss each argument in turn.

Garriga's claim of a hostile work environment fails. To prove a prima facie claim of a hostile work environment, an employee must subjectively perceive that the harassment is "sufficiently severe and pervasive to alter the terms or conditions of employment," and that subjective perception must be objectively reasonable based on four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc). Garriga argues that Taylor's conduct was objectively severe and pervasive, but Mendoza establishes otherwise. Mendoza involved an employee who shared an office area with her supervisor and alleged that over a period of 11 months, her supervisor "'constantly'" followed her and stared at her "'in a very obvious fashion,'" directed a sexually charged statement at her, and touched her once. Id. at 1242–43. We held that this conduct "falls well short of the level of either severe or pervasive conduct sufficient to alter [the] terms or conditions of employment." Id. at 1247. We emphasized that three of the objective factors "clearly [were] absent," and even the frequency of the supervisor's constant conduct could "not compensate for the absence of the other

6

factors." Id. at 1248. Measured against the 11 months during which Mendoza faced daily staring and following, Garriga's complaint fails. Taylor's boorish conduct, alleged to have occurred on nine days over a period of five months, is far less severe and pervasive than even the conduct alleged in Mendoza.

Garriga's claim of retaliation also fails. Garriga can establish a prima facie case of retaliation by proving that she "engaged in statutorily protected activity, [she] suffered a materially adverse action, and there was some causal relation between the two events." Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008). Garriga conceded at oral argument that her placement on the coaching worksheet alone was not a materially adverse action under Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68–70, 126 S. Ct. 2405, 2415–16 (2006). Garriga's termination establishes a prima facie case of retaliation, but Novo Nordisk articulated a legitimate, non-discriminatory justification for her firing, which Garriga failed to rebut as pretextual. See Goldsmith, 513 F.3d at 1277. Novo Nordisk proferred that it fired Garriga and Duffy for violating the policies of the Pharmaceutical Research and Manufacturers of America by sponsoring the dinner. Sewock independently reviewed Arnell's investigation and decided, in good faith, that the primary purpose of the dinner was not training, which violated company policy and merited termination. See EEOC

7

v. Total Sys. Servs., Inc., 221 F.3d 1171, 1176–77 (11th Cir. 2000).  Garriga failed to present evidence that this legitimate and nondiscriminatory reason for terminating her was false.

## IV.  CONCLUSION

We affirm the summary judgment in favor of Novo Nordisk.

**AFFIRMED**.